FILED
2008 Jun-19  PM 03:32
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

COLBERT COUNTY BOARD
OF EDUCATION,

        Plaintiff,

v.                                         CV-07-J-1430-NW

B.R.T., by and through her mother
and next friend, TERESA T. CAGLE,

        Defendant.

## MEMORANDUM OPINION

This case comes before the court on the parties' cross motions for judgment

on the pleadings or, in the alternative, for judgment on the administrative record

(docs. 7 & 8).  The administrative proceedings leading up to this appeal began in

2007 when the defendant filed a request for a due process hearing with the

plaintiff school board under the Individuals with Disabilities Education Act

("IDEA"), 20 U.S.C. § 1400 *et seq* (exh. 3 to doc. 1).  A hearing was held after

which the ALJ concluded that the plaintiff had not provided the defendant with a

free appropriate public education ("FAPE") as is required by the IDEA (exh. 3 to

doc. 1).  The plaintiff appealed the ALJ's ruling to the Circuit Court of Colbert

County (exh. 1 to doc. 1).  Thereafter, the defendant removed the case to the

United States District Court for the Northern District of Alabama (doc. 1).  Having considered all of the parties' submissions, for the following reasons the ALJ's decision is due to be **REVERSED**.

## FACTUAL BACKGROUND

This litigation arises out of the plaintiff's attempt to educate the defendant, B.R.T., pursuant to the provisions of the IDEA.  B.R.T. is a female student from Tuscumbia, Alabama in Colbert County who was seven years old at the time of the due process hearing.  HR[1] 41, 47; exh. 1 to doc. 1.  B.R.T. has a condition called oculo-cutaneous albinism, which causes her to have a very pale complexion and almost white hair.  HR 41-43.  People with oculo-cutaneous albinism are sometimes derogatorily referred to as albinos.  HR 43.  In addition to the oculo-cutaneous albinism condition, B.R.T.'s hearing and vision are also impaired.  HR 44-45.

B.R.T.'s visual impairment is related to the oculo-cutaneous albinis and was diagnosed immediately following her birth.  HR 46.  On the other hand, B.R.T.'s hearing impairment is not related to the oculo-cutaneous albinism and was not properly diagnosed until March of 2006.  HR 44.  B.R.T. currently wears hearing

---

[1]HR refers to the hearing record which is contained in the docket at attachment 2 to doc. 1.

2

aids for the condition which she first received on September 7, 2006. HR 59.

According to B.R.T.'s mother, Teresa Cagle,[2] B.R.T.'s impairments cause B.R.T.

to be uncomfortable in social situations. HR 46. Furthermore, B.R.T. suffers from

separation anxiety when she is separated from her mother because her mother

serves as her interpreter. HR 53.

Because of her hearing and visual impairments Ms. Cagle enrolled B.R.T. in

a pre-kindergarten program at the Alabama Institute for the Deaf and Blind

("AIDB") center in Tuscumbia. HR 47. On August 7, 2006, Ms. Cagle enrolled

B.R.T. in New Bethel Elementary School, the plaintiff's home-zoned school. HR

48. That same day Ms. Cagle met with Ms. Vicki Turberville who is the special

education coordinator/psychometrist for the school board, Glenda Cane from the

AIDB, B.R.T.'s teacher at New Bethel, the special education teacher at New

Bethel, and the school nurse at New Bethel to discuss B.R.T.'s conditions. HR 49;

Turberville aff. at 2.[3] According to Ms. Cagle, a plan was discussed for educating

B.R.T. which included, among other things, books with large print and a visor for

B.R.T. to wear on the playground. HR 49. Ms. Cagle stated at the due process

hearing that she wanted B.R.T. to participate in the education program that was

---

[2]Teresa Cagle is also referred to as Teresa Terrell in a number of the documents contained in the record.

[3]Vicki Turberville's affidavit is located in exhibit J to document 7.

discussed at the August 7, 2006, meeting.  HR 49.

Following the August 7 meeting, a number of assessments of B.R.T. were conducted to determine if she was eligible to receive special education and related services (exh. 1 to doc. 1).  These included assessments of B.R.T.'s hearing, vision, speech/language, and articulation.  *Id*.  In addition, the second edition of the BATTELLE Developmental Inventory Screening Test[4] was administered by an outside consultant.  *Id*.

A subsequent meeting was held on August 30, 2007, to discuss the development of an individual education program ("IEP") for B.R.T.  HR 50.  At the August 30 meeting, the school officials discussed an educational program that was different from the one discussed at the August 7 meeting.  According to the program discussed at the August 30 meeting, B.R.T. would be taken out of the general education program at New Bethel and placed in a self-contained class at Leighton Elementary School.  HR 51-52.  Leighton is approximately fifteen to twenty miles from B.R.T.'s home while New Bethel is five miles from B.R.T.'s home.  HR 52.  The school officials explained that they wanted to place B.R.T. in

---

[4]The Battelle Developmental Inventory Screening Test is administered to children six months to eight years old and includes subtests which measure fine and gross motor, adaptive, personal-social, receptive and expressive language, and cognitive skills.

a self-contained class because of behavioral problems that B.R.T. exhibited while at New Bethel.  HR 53-54.   At the conclusion of the meeting, Ms. Cagle signed the IEP that the school officials had developed stating that she was present for the meeting, but she refused to consent to B.R.T.'s placement in the self-contained class at Leighton.  HR 65.

On August 31, 2006, Ms. Turberville wrote Ms. Cagle requesting her consent so that the school system could implement B.R.T.'s proposed IEP (exh. B to doc. 7).[5]  The letter emphasized that Colbert County was ready, willing, and able to meet B.R.T.'s needs, but that it could not begin to provide her services until it received Ms. Cagle's consent.  *Id.*  Receiving no response from Ms. Cagle, Ms. Turberville sent additional letters to Ms. Cagle requesting her consent on September 28, 2006, October 9, 2006, and March 6, 2007 (exh. E to doc. 7).  To date, Ms. Cagle has never given her consent to the school board for the initial provision of special education services to B.R.T.

After Ms. Cagle learned of the school officials' plan to move B.R.T. to the self-contained class at Leighton, Ms. Cagle visited the class to observe whether it would be an appropriate place for B.R.T.  HR 56-57.  Ms. Cagle found a class of nine  children who, in her opinion, were more severely disabled than B.R.T.  HR

---

[5]Exhibits A through E are contained in attachment 1 to document 7.

56. The children in the class ranged from kindergarten to sixth grade. HR 57. Some of the children in the class wore diapers. HR 57. According to Ms. Cagle, if B.R.T. had been placed in the class at Leighton, she would have been the highest functioning child in the class. HR 57-58.

On November 30, 2006, the parties agreed to meet to attempt to mediate their dispute.[6] HR 76. Prior to the mediation the school learned that Ms. Cagle's attorney James Sears would be present at the mediation. HR 78. When Ms. Cagle and Mr. Sears arrived at the mediation on November 30, Ms. Turberville refused to go forward with the mediation because the school board's attorney Stanley Munsey was not present. HR 78-79.

In February of 2007 B.R.T. filed a notice for a due process hearing with the State Superintendent of Instruction pursuant to the provisions of the IDEA, 20 U.S.C. § 1415, and the Alabama Administrative Code § 290-8-9-.08 (exh. I to doc. 7).[7] The complaint alleged that the school board had failed to provide B.R.T. with a FAPE by: 1) failing to develop and implement an IEP that complies with the technical and substantive requirements of state and federal laws and the rules and regulations promulgated thereto; 2) failing to conduct a functional behavior

---

[6]It is unclear from the record which party requested the mediation.

[7]Part of exhibit H, exhibit I, and exhibit J are contained in exhibit 6 to doc. 7.

assessment despite having sufficient information regarding B.R.T.'s behavior to warrant same; 3) failing to develop and implement an appropriate behavior intervention plan; 4) failing to include B.R.T.'s parent as an equal participant in the development and implementation of B.R.T.'s educational program as required by state and federal laws and the rules and regulations promulgated thereto; 5) failing to take into consideration B.R.T.'s individual nature and needs in the development of her IEP; and 6) failing to take into consideration B.R.T's disabilities when conducting a psychoeducational evaluation. *Id.* As part of the notice, B.R.T. expressly did not request mediation and waived her right to a resolution meeting. *Id.*

As mandated by the IDEA, the school board attempted to schedule a resolution meeting to settle the dispute prior to the due process hearing. HR 20-21. On February 13, 2007, the school board sent Ms. Cagle a letter informing her that a resolution meeting was scheduled for February 22, 2007 (exh. E to doc. 7). The letter explained that the date was chosen by the school board because Ms. Cagle refused to provide a date and time that was convenient for her. *Id.* The letter further explained that Ms. Cagle had requested that the school board's attorney contact her attorney in order to set up the meeting and that the school board's attorney Mr. Munsey had declined to do so because of his policy of not

discussing matters in litigation over the telephone.  *Id*.  On February 15, 2007, a second copy of the February 13, 2007, letter was sent to Ms. Cagle.  *Id*.  On February 22, 2007, the school board officials appeared ready to conduct the resolution meeting, however, Ms. Cagle failed to appear or to call and say she intended not to appear.  HR 13.

Although a resolution meeting was never held, a due process hearing before an Administrative Law Judge ("ALJ") was held on May 10, 2007.  HR 1.  Before the hearing officially opened, Mr. Munsey requested that the ALJ consider two threshold issues before proceeding with the hearing.  HR 9-10. The first issue raised by Mr. Munsey was Ms. Cagle's failure to consent to the initial provision of services to B.R.T.  HR 10.  Mr. Munsey argued that under the IDEA the school board could not file for a due process hearing to force the parent's consent.  HR 25-27.  Moreover, Mr. Munsey asserted that the school board could not be held liable for not providing B.R.T. with a FAPE unless Ms. Cagle consented in writing to the initial provision of services to B.R.T.  HR 10.  The ALJ disagreed with Mr. Munsey, finding that if the school board was concerned about Ms. Cagle's consent, then the board could have filed for its own due process hearing on that issue.  HR 26-27.  Because they were already in a due process hearing, the ALJ believed that it was unnecessary to halt the hearing to allow the school board to

8

initiate its own due process hearing.  HR 22-23.

The second issue was Ms. Cagle's failure to attend a resolution meeting prior to the due process hearing as required by the IDEA.  HR 10-11.  According to Mr. Munsey, a resolution meeting had to be held before a due process hearing could be held under the IDEA.  HR 10-15.  The ALJ ruled that Mr. Munsey had the burden of proving that Ms. Cagle did not participate in the resolution meeting and, therefore, needed to present testimony on that issue.  HR 22-23.  Mr. Munsey strongly disagreed with the ALJ's ruling on these two issues and refused to further participate in the due process hearing.  HR 29.  Mr. Munsey was concerned that if he participated in the hearing he would waive his two threshold objections.  HR 33.  Thereafter, Mr. Munsey walked out of the hearing.  HR 38-39.

Following Mr. Munsey's decision not to participate in the hearing, the ALJ commenced the hearing and allowed Mr. Sears to present testimony.  HR 39-40. The only live testimony taken was from Ms. Cagle, who testified about her daughter's condition and the events leading up to the due process hearing.  HR 40-82.  The ALJ also allowed Mr. Sears to summarize what he believed Ms. Turberville would have testified to if she was present.[8]  HR 82-84.

---

[8]An affidavit submitted by Ms. Turberville states that she, along with thirteen other school system employees, were present at the hearing pursuant to a subpoena issued by B.R.T. (exh. J to doc. 7).  Ms. Turberville states that she and the thirteen other school system employees

On May 30, 2007, the ALJ issued his decision finding that the school board had failed to provide a FAPE to B.R.T. (exh. 4 to doc. 1).  The ALJ found that throughout the dispute,

> the school system resisted any attempt by [B.R.T.] or her counsel to resolve this case in the manner envisioned by Congress when it authorized the IDEA in July, 2005. Instead the school system insisted that the parent could not proceed to due process hearing when its own capriciousness prevented the parent from attempting to settle this case short of such proceedings.  For that reason the impartial due process hearing complaint should not have been dismissed prior to a full hearing on the issue of the parent's lack of participation in a resolution meeting.

*Id*. at 23.  On the issue of consent, the ALJ found that Ms. Cagle was not required to consent to services which she believed to be inappropriate in order to be entitled to a due process hearing.  *Id*. at 15.  The ALJ believed that Ms. Cagle's failure to consent did not warrant a dismissal of the request for a due process hearing.  *Id*.

Having dismissed the two threshold issues raised by the school board, the ALJ next found that the school board had not provided B.R.T. with a FAPE as required by the IDEA.  *Id*. at 24-26.  Specifically, the ALJ found that the evaluation of B.R.T. was inadequate because an intellectual assessment of B.R.T.

---

were present in the building during the entire hearing.  *Id*.  According to Ms. Turberville, no one spoke to any of the witnesses during the two and a half hours that they remained in the building waiting to testify.  *Id*.

was not performed, the IEP plan was inappropriate because it did not comply with the requirements of the IDEA, and the manner in which the school board chose to address B.R.T.'s behavior problems was inappropriate because there was no data presented demonstrating why placing B.R.T. in the self-contained class at Leighton was in her best interest.  *Id*. at 23-26.

Based on these findings, the ALJ ordered the school board to develop a behavioral intervention plan and to write an appropriate IEP for B.R.T.  *Id*. at 26. The ALJ further ordered the school board to educate B.R.T. at New Bethel.  *Id*. at 26-27.

Following the ALJ's decision, on June 28, 2007, the school board filed a "Notice of Intent to File Civil Action Pursuant to 20 U.S.C. Section 1415(i)(2)" (doc. 1).  On July 23, 2007, the school board filed a "Complaint and brief" to "appeal the findings and orders rendered by the Hearing Officer appointed by the Alabama Department of Education in the administrative due process proceeding which is the subject of this Civil Action" (exh. 1 to doc. 1).  The complaint was filed in the Circuit Court of Colbert County.  *Id*.  B.R.T. subsequently filed a Notice of Removal removing the case to the United States District Court for the Northern District of Alabama (doc. 1).

**STANDARD OF REVIEW**

11

This case is before the court on the administrative record of the due process hearing.  The IDEA directs the district court to base its decision on a preponderance of the evidence and to "grant such relief as the court determines is appropriate." *Draper v. Atlanta Independent School System,* 518 F.3d 1275, 1284 (11th Cir. 2008), citing 20 U.S.C. § 1415(i)(2)(C)(iii).  A district court must conduct an entirely de novo review of the ALJ's findings and has discretion to determine the level of deference it will give to the ALJ's findings.  *CP v. Leon County School Bd., Florida,* 483 F.3d 1151, 1156 n. 4 (11th Cir. 2007); *School Bd. of Collier County v. K.C.*, 285 F.3d 977, 982-83 (11th Cir. 2002).  Nothing prevents a district judge from factfinding in IDEA cases.  *M.T.V. v. Dekalb County Sch. Dist.*, 446 F.3d 1153, 1156 (11th  Cir. 2006).  Thus, there is no rule in the IDEA context that an ALJ's credibility findings must be accepted unless the reviewing judge personally rehears live testimony of the witness.  *School Bd. of Lee County v. E.S..*  2007 WL 5002085, 1 (M.D.Fla. 2008).

Nonetheless, "the administrative decision in an IDEA case is entitled to due weight and the court must be careful not to substitute its judgment for that of the state educational authorities.  Still, ... the extent of the deference to be given to the administrative decision is left to the sound discretion of the district court which must consider the administrative findings but is free to accept or reject them."

*Walker County School Dist. v. Bennett*, 203 F.3d 1293, 1297-98 (11th Cir. 2000). "To that end, administrative factfindings are considered to be prima facie correct, and if a reviewing court fails to adhere to them, it is obliged to explain why." *School Bd. of Lee County, Florida v. M.M.,* 2007 WL 983274, 2 (M.D. Fla. 2007); citing *M.M. v. School Bd. of Dade County, Fla.*, 437 F.3d at 1097 (quoting *Loren F. v. Atlanta Indep. Sch. Sys.*, 349 F.3d 1309, 1314 n. 5 (11th Cir. 2003)).

To the extent this case involves the interpretation of a federal statute, it is a question of law which is reviewed *de novo*. *Leon County School Bd. Florida,* 483 F.3d at 1156.

Because the plaintiff is the party challenging the administrative decision, it bears the burden of proof before this court. *Schaffer v. Weast*, 546 U.S. 49, 62 (2005).

## LEGAL ANALYSIS

The purpose of the IDEA generally is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living ...." 20 U.S.C. § 1400(d)(1)(A). The Supreme Court has held that in order to satisfy its duty to provide a FAPE, a state or local educational agency must

13

provide "personalized instruction with sufficient support services to permit the child to benefit educationally from that instruction." *Bd. of Educ. v. Rowley*, 458 U.S. 176, 203 (1982). The test for determining whether a school board has provided a FAPE in cases arising under the IDEA: "(1) whether the state actor has complied with the procedures set forth in the IDEA, and (2) whether the [individualized educational program] developed pursuant to the IDEA is reasonably calculated to enable the child to receive educational benefit." *School Bd. Of Collier County*, 285 F.3d at 982; citing *Rowley*, 458 U.S. at 206-07. This standard, that the local school system must provide the child "some educational benefit," *Rowley*, 458 U.S. at 200, 102 S.Ct. at 3048, has become known as the Rowley "basic floor of opportunity" standard. *JSK v. Sch. Bd.*, 941 F.2d 1563, 1572-73 (11th Cir. 1991) ("The ... educational outcome need not maximize the child's education. If the educational benefits are adequate based on surrounding and supporting facts, [IDEA] requirements have been satisfied.") (internal citations omitted).

Before the school board can provide any special education and related services to a child, the IDEA requires the school board to perform a "full and individual initial evaluation" to determine whether the child has a disability. 20 U.S.C. § 1414(a)(1)(A). The purpose of this initial evaluation is to determine

14

whether the child has a disability and to determine the educational needs of the child.  *Id*. §§ 1414(a)(1)(C)(i)(I)-(II).  The agency proposing to conduct the evaluation must obtain informed consent from the parent before conducting the evaluation.  *Id.* § 1414(a)(1)(D)(i)(I); *see also* Ala. Admin. Code § 290-8-9-.02(1)(a).  The corresponding section of the Alabama Administrative Code defines consent as consent that is given by a parent who is fully informed, in writing, and voluntary.  Ala. Admin. Code § 290-8-9-.00(1); *see also* Comments, 71 Fed. Reg. 46551 (2006) (defining consent as consent that is both informed and in writing).  If a parent refuses to consent to the initial evaluation, or the parent fails to respond to a request to provide consent, the school board may pursue the parent's consent through mediation or a due process hearing.  20 U.S.C. § 1414(a)(1)(D)(ii)(I); *see also* Ala. Admin. Code § 290-8-9-.02(1)(a)(1).

Once it has been determined that a child suffers from a disability, the IDEA requires that an IEP be developed that specifically addresses the child's needs.  An IEP is a "written statement for each child with a disability that is developed, reviewed, and revised in accordance with [the IDEA's guidelines]."  20 U.S.C. § 1414(d)(1)(A)(I).  As the United States Court of Appeals for the Eleventh Circuit has noted, "the IEP is more than a mere exercise in public relations. It forms the basis for the [disabled] child's entitlement to an individualized and appropriate

15

education." *Doe v. Ala. State Dep't of Educ.*, 915 F.2d 651, 654 (11th Cir. 1990).

A school must formulate an IEP during a meeting between the student's parents and school officials.  20 U.S.C. § 1414(d)(1)(A)-(B).  After a suitable IEP is developed, but before it can be implemented, the parent of the child must give informed consent.  20 U.S.C. § 1414(a)(1)(D)(i)(II); *see also* Ala. Admin. Code § 290-8-9-.04(4)(a).  If the parent refuses to consent to the initial provision of services, the school board cannot seek to obtain the parent's consent through mediation or a due process hearing.  20 U.S.C. § 1414(a)(1)(D)(ii)(II); *see also* Ala. Admin. Code 290-8-9-.04(4)(c).  If the parent refuses to provide consent for the initial provision of services, or the parent fails to respond to a request to provide such consent, the school board "shall not be considered in violation of the requirement to make available a free appropriate public education to the child." 20 U.S.C. § 1414(a)(1)(D)(ii)(III)(aa); *see also* Ala. Admin. Code § 290-8-9-.04(4)(d)(i).  Moreover, the school board is also "not required to convene an IEP meeting or develop an IEP under this section for the child for the special education a related services for which the local educational agency requests consent."  20 U.S.C. § 1414(a)(1)(D)(ii)(III)(bb)*; see also* Ala. Admin. Code § 290-8-9-.04(4)(d)(ii).

The school board's appeal can be summarized into three main issues: 1)

whether the school board can be held responsible for not providing a FAPE to B.R.T. where Ms. Cagle refused to consent to the initial provision of services; 2) whether the parties' failure to conduct a resolution meeting precludes a due process hearing; and 3) whether the ALJ properly found that the school board failed to provide a FAPE to B.R.T.

> I.      *Whether the school board can be held responsible for not providing a FAPE to B.R.T. where her parent refused to consent to the initial provision of services.*

The first issue presented by the school board on appeal is whether it can be held liable for not providing a FAPE to B.R.T. where Ms. Cagle refused to provide consent for the initial provision of services.  20 U.S.C. § 1414(a)(1)(D)(ii)(III)(aa) clearly states that a school system cannot be held liable for failing to provide a student with a FAPE where the parent of the system does not consent to the initial provision of services.  In this case, it is undisputed that Ms. Cagle has never consented to the initial provision of services for B.R.T.  Thus, the express language of the IDEA precludes the school board from being held liable for not providing a FAPE to B.R.T.  The ALJ nevertheless found that the school board failed to provide a FAPE to B.R.T.

The ALJ does not contend that Ms. Cagle ever gave written consent for the provision of services to B.R.T.  Instead, the ALJ excuses Ms. Cagle's failure to

provide consent by stating that the law does not require "a parent to submit to services that they deem inappropriate and dangerous to their child in exchange for the right to proceed to a due process hearing" (exh. 3 to doc. 1 at 15).  The ALJ further states that the only effect of a parent's refusal to consent to services for their disabled child is it provides the school board with an excuse to not provide such services until the agency can utilize mediation or an impartial due process hearing to secure that consent.  *Id*.  The ALJ cites 20 U.S.C. § 1414(a)(1)(D)(ii)(II) in support of this proposition.  The ALJ thus concludes that a parent's refusal to provide consent "does not warrant dismissal of a parent's due process hearing request challenging the appropriateness of the services for which consent to provide is sought" (exh. 3 to doc. 1 at 15)

The ALJ's interpretation of the consent provisions of the IDEA contradicts the express provisions of the IDEA regarding parental consent.  The ALJ appears to confuse the differences between the two types of consent that the school board must obtain from the parent before services can be provided to a disabled child.  The first consent that the school board must obtain is the consent to perform the initial evaluation of the child.  20 U.S.C. § 1414(a)(1)(D)(i)(I).  If the parent refuses to provide this first consent, then the IDEA permits the school board to obtain it through mediation or a due process hearing.  *Id*. § 1414(a)(1)(D)(ii)(I).

18

The second consent that the school board must obtain is the consent for the initial provision of services to the child.  *Id*. § 1414(a)(1)(D)(i)(II).  If the parent refuses to provide this second consent, then the IDEA expressly forbids the school board from obtaining it through mediation or a due process hearing.  *Id*. § 1414(a)(1)(D)(ii)(II).  Moreover, the IDEA expressly absolves the school board of liability for not providing a FAPE to a disabled child if this second consent is not obtained.  *Id*. § 1414(a)(1)(D)(ii)(III)(aa).  The ALJ's conclusions concerning the issue of consent are, therefore, incorrect.

B.R.T. argues that the consent requirement should be waived because the school board did not make Ms. Cagle aware of the fact that she would not be able to request a hearing if she did not give consent to the initial provision of services. However, there is no evidence that Ms. Cagle would have consented to what she believed was an inappropriate IEP if she had known that fact.  Moreover, there is no exception in the IDEA or the Alabama Administrative Code allowing the second consent to be waived.  In fact, it is clear from the IDEA's construction that the second consent is the more important of the two consents and the decision about whether to give that consent is left solely to the discretion of the parent. Unlike the first consent, the second consent cannot be obtained by the school board through the resolution process.  *See* 20 U.S.C. § 1414(a)(1)(D)(ii)(II).

As the IDEA clearly states, the school board cannot obtain the parent's consent through due process or mediation and it also cannot be held liable for not providing a FAPE.  The ALJ's conclusions to the contrary, therefore, must be reversed.  B.R.T.'s argument that an exception should be made in this case also fails because neither the IDEA nor the Alabama Administrative Code provide an exception to the requirement for parental consent for the initial provision of services.  Thus, the ALJ clearly erred by holding finding that the school board failed to provide B.R.T. with a FAPE.

II.    *Whether the parties' failure to conduct a resolution meeting precludes a due process hearing.*

The next issue before the court is whether the ALJ was entitled to hold the due process hearing in spite of the fact that the parties had not held a resolution meeting.  The Alabama Administrative Code requires the school board within fifteen days of receiving a parent's request for a due process hearing to convene a meeting with the parent(s) and the relevant member or members of the IEP team who have specific knowledge of the facts identified in the complaint.  Ala. Admin. Code § 290-8-9-.08(9)(c)(3)(i).  The Alabama Administrative Code requires that the meeting be held prior to the due process hearing.  *Id*.  However, "[t]he resolution meeting need not be held if the parent and the [school board] agree in

writing to waive the meeting or they agree to use the State mediation process." *Id*.

Unless the parties jointly agree to waive the resolution meeting or to use

mediation, "the failure of the parent filing a due process request to participate in

the resolution meeting will delay the timelines for the resolution process and due

process hearing until the meeting is held." *Id*. § 290-8-9-.08(3)(iii).  If the school

board is unable to obtain the parent's participation in the resolution process, the

school board may, after reasonable efforts have been made to procure the parent's

participation, request that the hearing officer dismiss the parent's hearing request.

*Id*.

Here, it is undisputed that no resolution meeting was held.  In spite of this

fact, the ALJ found that the school board was not entitled to have B.R.T.'s

complaint dismissed because the school system thwarted the resolution process

(exh. 3 to doc. 1 at 14, 23).   The ALJ found that it was undisputed that "at all

times the parent was willing to engage in a resolution meeting provided her

attorney accompanied her." *Id*. at 14.  However, the ALJ found that the school

board had not made reasonable efforts to contact Ms. Cagle's attorney after she

informed the school board that she wanted her attorney present at the resolution

meeting. *Id*.

The ALJ's discussion concerning which party is to blame for not holding a

resolution meeting simply serves to muddle the underlying issue.  Neither the ALJ

nor B.R.T has presented any authority in the Alabama Administrative Code or the

IDEA which allows a due process hearing to be held where no resolution meeting

was held.  Furthermore, there is no exception in either the Alabama Administrative

Code or the IDEA which allows the ALJ to bypass the resolution meeting where

one party has "thwarted" the process.  Therefore, it is irrelevant whether one party

deserves more blame than the other party[9] because the issue is whether a due

process hearing can be held where no resolution meeting has been held.

The court finds that it was improper for the ALJ to hold the due process

hearing because the parties had not conducted a resolution meeting as required by

the Alabama Administrative Code.  While the ALJ may be correct that a fact issue

existed as to whether the school board "thwarted" the resolution process, the

resolution of that issue is irrelevant because there is no exception allowing the due

---

[9]On the issue of which party is to blame, the ALJ's decision unfairly places all of the blame on the school board when it appears that both parties deserve equal blame for not holding a resolution meeting.  The school board deserves blame for not initiating contact with Mr. Spears after Ms. Cagle requested that the school board contact her attorney.  Mr. Munsey cannot simply stand behind his policy of not contacting people by telephone during the course of litigation.  There is no reason why Mr. Munsey could not have contacted Mr. Spears by letter, fax, or electronic mail following Ms. Cagle's request to contact her attorney.  However, the evidence demonstrates that the school board made repeated efforts to contact Ms. Cagle to set up a resolution meeting and that Ms. Cagle did not respond to these requests.  Ms. Cagle and Mr. Sears deserve blame for not responding to the school board's requests when they were both well aware of them.

process hearing to proceed without a resolution meeting.  The ALJ should have refused to hold the due process hearing until the parties held or jointly waived the resolution meeting.

     III.     *Whether the school board denied a free appropriate public education to B.R.T.*

Having concluded that the it was improper for the ALJ to hold the due process hearing and for the ALJ to find that the school board denied B.R.T. a FAPE, the court does not reach the issue of whether B.R.T. was in fact denied a FAPE.  If the court were to engage in an analysis of whether the school board provided B.R.T. with a FAPE, the court would be required to engage in rank speculation because no special education services were ever provided to B.R.T. The court simply cannot determine whether a FAPE was provided to B.R.T. where no services were actually provided.[10]

## Conclusion

---

[10]The court is sympathetic to the position in which this decision leaves parents such as Ms. Cagle who object to the IEP proposed for their child.  While the IDEA and the Alabama Administrative Code specify the effect of a parent's refusal to consent, they fail to provide the parent with an appropriate remedy.  Presumably, the IDEA and the Alabama Administrative Code contemplate that the parent will continue to meet with the IEP team to develop a more appropriate plan.  However, that is nothing more than an assumption because the IDEA and the Alabama Administrative Code are silent on the parent's rights in this situation.  This court simply does not have the authority to rewrite the IDEA or provide B.R.T. with rights not included in the IDEA.

For the foregoing reasons the decision of the Administrative Law Judge is due to be **REVERSED**, it is therefore **ORDERED** that the plaintiff's motion for summary judgment or in the alternative for judgment on the record (doc. 7) is **GRANTED** and the defendant's motion for summary judgment or in the alternative for judgment on the record (doc. 8) is **DENIED**.

**DONE** and **ORDERED** this the 19th day of June 2008.

INGE PRYTZ JOHNSON
U.S. DISTRICT JUDGE